Duquesne Light Company, Appellant *v.*
Monroeville Borough.

Argued October 8, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused January 12, 1973.

*David McNeil Olds,* with him *Harry H. Weil, T. J. Munsch, Jr.,* and *Reed, Smith, Shaw & McClay,* for appellant, Duquesne Light Company.

*Edward Munce,* with him *Anthony L. Marino,* for appellant, Pennsylvania Public Utility Commission.

*Richard B. Tucker, Jr.,* with him *B. A. Karlowitz,* and *Tucker, Burke, Campbell & Arensberg,* for appellant, The Bell Telephone Company of Pennsylvania.

*John M. Feeney,* with him *Richard L. Rosenzweig, Jerome M. Myers, Harrington, Feeney & Schweers, Rosenzweig & Rosenzweig* and *Meyers & Meyers,* for appellee.

*Vincent Butler,* with him *Gennaro D. Caliendo,* for intervenor.

OPINION BY MR. CHIEF JUSTICE JONES, November 17, 1972:

On October 25, 1966, the Borough of Monroeville [Borough] enacted Ordinance No. 557, which created an underground wire district pursuant to Sections 2301 through 2305 of the Pennsylvania Borough Code.[1] The

---

[1] The ordinance in question was enacted pursuant to the Borough Code of 1947 (Act of May 4, 1927, P. L. 519, art. XXIII, §301, *as amended,* Act of July 10, 1947, P. L. 1621, §66), which has since been superseded by The Borough Code of 1966 (Act of February 1,

ordinance prohibits the introduction of new overhead wires, cables and supporting poles within the defined district and requires the removal of existing overhead facilities by either relocating the facilities outside the district, thereby serving customers from the rear of their properties, or by placing the faciilties in underground conduits within the district. The ordinance is binding upon all persons, including the Borough. The "underground wiring district" would be 300' in width (extending about two and one-half miles along the William Penn Highway [U. S. Business Route 22] from a point near the west edge of the Borough eastwardly to the Pennsylvania Turnpike and about one mile along a north-south road, intersecting William Penn Highway, known as Haymaker Road and Mosside Boulevard).

Appellants, Duquesne Light Company [Duquesne], Bell Telephone Company [Bell] and the American Telegraph and Telephone Company [A. T. & T.], all maintain overhead wire facilities within the district. After passage of the ordinance in 1966, the appellants were notified by the Borough that they had approximately three years and two months to remove their overhead wires and supporting poles and relocate their facilities, either in the rear of the serviced properties or underground. The time limit was set so that the relocation of the wires could coincide with a proposed widening of the William Penn Highway by the Pennsylvana Department of Highways.

Duquesne filed an appeal with the Allegheny County Quarter Sessions Court within the thirty-day statutory appeal period. However, by mutual consent, no further activity regarding this appeal was taken by

1966, P. L. (1965) 1656). However, it is undisputed that this ordinance was passed before the 1966 Act took effect and is thus controlled by the 1947 Act. All future references to the Borough Code will be to the 1947 Act unless otherwise noted.

either party until May of 1968. At that time Duquesne filed a new complaint in equity which was soon followed by a separate action in equity commenced by Bell and A. T. & T. Both actions were consolidated by order of court and the Pennsylvania Public Utility Commission [PUC] was permitted to intervene. Prior to trial, preliminary objections were filed by Bell and Duquesne and denied. On September 9, 1969, after a trial, the court entered an adjudication and decree nisi sustaining the validity of the ordinance and the reasonableness of the ordinance district. Appellants' exceptions were denied and, on March 20, 1970, the court entered its final decree dismissing both the action in equity and Duquesne's statutory appeal and further ordering appellants to comply with the ordinance within twelve months. A supersedeas was granted by the lower court pending disposition of the appeals by this Court.[2]

The numerous specific assignments of error which the several appellants have presented for our consideration resolve themselves into the basic question whether the Borough of Monroeville appropriately applied Section 2301 of the Borough Code in enacting an ordinance prohibiting the introduction of new overhead wires, cables and supporting poles and requiring the removal of existing overhead facilities by relocating or undergrounding, or whether the power to compel the undergrounding of electric wires is preempted by the Public Utility Code.[3]

-------

[2] Prior to oral argument before this Court, we allowed Pennsylvania Power and Light Company [P. P. & L.] to intervene as amicus curiae.

[3] The Court's determination here that the Borough Code may not be relied upon to justify the Borough ordinance to the exclusion of Public Utility Commission approval obviates the necessity to pass upon the questions of whether the ordinance comports with the statutory requirement of reasonableness and whether the en-

The Borough ordinance requiring the appellants to underground or relocate their overhead wires was passed pursuant to the power conferred upon boroughs primarily by Section 2301 of the Borough Code, Act of May 4, 1927, P. L. 519, art. XXIII, §301, *as amended,* Act of July 10, 1947, P. L. 1621, §66, 53 P.S. §47301, which provides: "Boroughs may define, by ordinance, a reasonable district within which electric light, electric power, telephone and telegraph wires shall be placed underground in conduits, owned and constructed either by the borough or by corporations owning such wires, or by corporations organized for the purpose of laying such conduits and renting space therein." Appellants argue that this section and the related sections appearing in Article XXIII of the Borough Code under the heading of "Electric Wires"[4] have been preempted by the Public Utility Code[5] generally. They do not claim that there is any section of the Public Utility Code which specifically mentions the PUC's power to regulate underground conduits but rather that this power is included in the general description of the PUC's regulatory powers.[6]

We have recognized that the Legislature enacted the Public Utility Code and created the PUC for the express purpose of standardizing the construction, operations and services of public utilities throughout Pennsylvania, *Chester County v. Philadelphia Electric Co.,* 420 Pa. 422, 218 A. 2d 331 (1966). Had the Borough

---

forcement of the ordinance is a taking of property without due process of law.

[4] Article XXIII is labeled "Underground Conduits" in the 1966 re-enactment.

[5] Act of May 28, 1937, P. L. 1053, art. I, §1 *et seq.*, 66 P.S. §1101 *et seq.*

[6] Appellants cite Sections 401, 412 413, 420, 507, 905, 906, 908, 1001, 1008 and 1009 (66 P.S. §§1172, 1182, 1183, 1190, 1217, 1345, 1346, 1348, 1391, 1398 and 1399 respectively).

chosen to do so, it could likely have used the PUC procedural machinery in an attempt to achieve the same goal, and the PUC would have been fully competent to determine the matter. Here, however, the Borough chose to act under the color of a statute which in this limited area ostensibly gives it powers equal to those of the PUC. We must, therefore, decide what impact these two laws have upon each other.

When faced with an apparent conflict between statutes, our primary concern is to determine, if possible, the intent of the legislature. Act of May 28, 1937, P. L. 1010, art. IV, §51 (46 P.S. §551).

The precursor of Section 2301 of the Borough Code in its earliest form predates the Public Utility law by approximately ten years. The Act of April 28, 1903, P. L. 335, granted boroughs the power to define underground wire districts and to regulate the use of underground conduits. This language was re-enacted in the Act of June 12, 1913, P. L. 488, which also extended the Borough's power to include telephone and telegraph companies. In that same year the legislature enacted the Public Service Company Law[7] which created the Public Service Commission, the predecessor of the present Public Utility Commission. A consolidation of the various laws concerning boroughs was effected by the enactment of the Act of May 14, 1915, P. L. 312: Chapter VI, Article XV, of this Act again restated the power of boroughs to compel and regulate underground wire facilities and retained the language of the 1913 Borough Act. In 1927, a comprehensive Borough Code was enacted:[8] this Act retained the provisions of the prior borough acts relating to undergrounding and control of wires and codified them as Article XXIII, §§2301 through 2305. This Act, subject to amendments enacted

[7] Act of July 26, 1913, P. L. 1374.
[8] Act of May 4, 1927, P. L. 519.

in 1947,[9] remained in force until it was re-enacted as the Borough Code of 1966.[10] The Public Service Company Law was completely revised by the Public Utility Code of 1937,[11] which renamed the Public Service Commission as the Public Utility Commission and redefined its powers.

The relevance of this historical exposition is that the specific language of Article XXIII of the Borough Code has been re-enacted four times since the original Public Service Company Law and twice since the Public Utility Law of 1937. We do not see how this continuum reflects an intent on the part of the Legislature to impliedly *repeal* Article XXIII.

The determination that §2301 has not been preempted by the Public Utility Code comports with our established principle of construing two apparently conflicting statutes to give effect, if possible, to both. Act of May 28, 1937, P. L. 1019, art. IV, 46 P.S. §563. To harmonize Section 2301 of the Borough Code with the Public Utility Code, the Borough Code must be read so that, although the borough may *define* reasonable underground wiring districts, the Public Utility Commission has the ultimate authority to determine the particulars of implementation, including timing, feasibility and cost of the project. This statutory construction is supported by the enactment of Borough Code Section 3501:

"nothing in this Act shall be construed to repeal:

\* \* \* \*

"(2) Any of the provisions of the Public Utility Law."

In the absence of Public Utility Code provisions on the subject, we would be inclined to hold that the six

---

[9] *Cf.*, footnote 1 of this opinion.

[10] Act of February 1, 1966, P. L. (1965) 1656.

[11] Act of May 28, 1937, P. L. 1053.

re-enactments of Article XXIII of the Borough Code and its specific language evidence an intent on the part of the Legislature to delegate to the Borough the unfettered power to compel the undergrounding of electric wires within a reasonable district. This Court has consistently held, however, that the Public Utility Commission has exclusive regulatory jurisdiction over the implementation of public utility facilities. Act of May 28, 1937, P. L. 1053, *as amended,* 66 P.S. §1101 *et seq.; Behrend v. Bell Telephone Co. of Pennsylvania,* 431 Pa. 63, 243 A. 2d 346 (1968) ; *Chester County v. Philadelphia Electric Co.,* 420 Pa. 422, 218 A. 2d 331 (1966) ; *Einhorn v. Philadelphia Electric Co.,* 410 Pa. 630, 190 A. 2d 569 (1963) ; *Lansdale Borough v. Philadelphia Electric Co.,* 403 Pa. 647, 170 A. 2d 565 (1961) ; *Duquesne Light Co. v. Upper St. Clair,* 377 Pa. 323, 105 A. 2d 287 (1954) ; *York Water Co. v. York,* 250 Pa. 115, 95 A. 396 (1915). "There can be no reasonable doubt that the legislative intention was to make the Public Service Act [precursor to the Public Utility Code] the supreme law of the State in the regulation and supervision of public service corporations, and this being so, it follows as a necessary sequence that all laws inconsistent with the powers thus conferred must be held to be repealed *or supplied* thereby." *York Water Co. v. York,* 250 Pa. 115, 118, 95 A. 396, 397 (1915). (Emphasis added.)

That the General Assembly in enacting the Borough Code intended it to be applied harmoniously with the Public Utility Law is evidenced by *Lansdale Borough v. Philadelphia Electric Co.,* 403 Pa. 647, 170 A. 2d 565 (1961), where this Court was called upon to construe another provision of the Borough Code.[12] "*Al-*

---

[12] The Borough was seeking to exercise its express authority under the Act of May 4, 1927, P. L. 519, *as amended,* 53 P.S. §47471, to sell electricity in areas annexed by it.

*though the Borough is armed with the provisions of the Borough Code, it can only effectuate its purpose by initially proceeding before the PUC.* The Public Utility Law contemplates such procedures by providing that: 'The commission, or any person, corporation or *municipal corporation* having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission. . . .' [Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1391] (Emphasis in original). Initial jurisdiction over the instant controversy is vested in the P. U. C. and *the available administrative remedies must be resorted to before the courts can exercise their power of review." Id.* at 651-52, 170 A. 2d at 567-68. (Emphasis added.)

That the Public Utility Commission is the appropriate forum for the adjudication of rates, services and facilities of public utilities within the Commonwealth was recognized in *Duquesne Light Co. v. Upper St. Clair,* 377 Pa. 323, 105 A. 2d 287 (1954) : "It is clear that the proposed transmission line is necessary for the rendition of efficent service to the public and that that necessity transcends the legitimate objectives of any one of the political subdivisions of the Commonwealth. We believe this is the reason why the General Assembly entrusted the regulation of public utilities to a commission of state-wide jurisdiction. Local authorities not only are ill-equipped to comprehend the needs of the public beyond their jurisdiction, but, and equally important, those authorities, if they had the power to regulate, necessarily would exercise that power with an eye toward the local situation and not with the best interest of the public at large. . . ." *Id.* at 335-36, 105 A. 2d at 293. State-wide public welfare dictates that the

Public Utility Commission exercise the control given it as a matter of public policy. Accordingly, we hold that Section 2301 of the Borough Code and the Public Utility Code must be read together so that effect may be given to both. Although the Borough of Monroeville does have the power to *define* reasonable underground wiring districts, implementation can only be achieved through Public Utility Commission action.

Decrees reversed and remanded for further proceedings consistent with this opinion. Each party shall pay its own costs.

The former Mr. Chief Justice BELL and the late Mr. Justice COHEN took no part in the decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join in the Court's opinion with the understanding that "implementation" by the Public Utility Commission of the Borough's *defined* reasonable underground wiring district means that the Public Utility Commission has the initial and exclusive authority to first determine, as it does in any other public utility regulatory matter, whether the Borough's defined district should become operative. Once the Public Utility Commission has affirmatively decided to implement the Borough's underground wiring district, the Commission then additionally assumes exclusive control over the physical details of the project, such as timing, rates, service and construction.

The Court's adoption of the language in *Lansdale Borough v. Philadelphia Electric Co.*, 403 Pa. 647, 170 A. 2d 565 (1961), leads inescapably to the requirement of Public Utility Commission approval: "Although the Borough is armed with the provisions of the Borough Code, it can only effectuate its purpose by initially proceeding before the P.U.C. . . ." *Id.* at 651, 170 A. 2d at 567.

Any other determination would clearly signal the end of unified utility regulation within this Commonwealth. The practical effect of allowing the Borough of Monroeville to compel public utilities to relocate their existing overhead wiring would be to permit a borough, free from any statewide considerations or prior approval by the Public Utility Commission, to require, as in this instance, the expenditure of over $1,000,000 by public utilities.* Obviously, these and similar expenditures would become part of the utilities' rate base, and accordingly, would be reflected in increased consumer rates. It is equally obvious that to permit these higher rates to be imposed on consumers outside of the borough would be in effect allowing the borough, by its unilateral action, to influence rates outside its geographic boundaries. Thus, it would appear reasonable to assume that the rate-making authority could impose these increased rates solely upon those subscribers within the borough. These additional costs could make utility usage by these consumers exceedingly expensive.

Mr. Justice POMEROY joins in this concurring opinion.

---

* Duquesne Light in its brief at page 26, and at oral argument, asserted that the costs of the proposed Monroeville undergrounding project would exceed $400,000 per mile, with the project extending approximately two and one-half miles. Further, appellant Bell, in its brief, at page 9, alleges that its costs, based on 1967 undergrounding estimates, will be approximately $275,000.