## Pennsylvania Power Company v. Greene Township

634

*Lee E. Whitmire, Jr.*, for plaintiff.
*John McBride*, for defendant.

SAWYER, *P.J.*, June 3, 1980—

## I. HISTORY OF THE CASE

This action was commenced by a petition for a declaratory judgment filed by Pennsylvania Power Company on March 28, 1978 and served on defendant, Greene Township, on April 17, 1978. Defendant filed preliminary objections in the form of a demurrer to the petition on June 2, 1978. Plaintiff filed an amended petition and an answer to defendant's preliminary objections on January 24, 1979. Argument on defendant's preliminary objections was heard on May 25, 1979, and the same were denied by order dated May 25, 1979.

At the time the petition in the within action was filed, declaratory judgment actions in Pennsylvania were governed by the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, 12 P.S. §831, as supplemented by the Act of May 22, 1935, P.L. 228, 12 P.S. §847 et seq. This act was repealed by the Judiciary Act Repealer Act (JARA) of April 28, 1978, P.L. 202, effective June 27, 1978, 42 P.S. §20001 et seq. The Declaratory Judgments Act, 42 Pa.C.S.A. §7531 replaced the former Uniform Declaratory Judgments Act and became effective immediately upon repeal of the old act. By order of

the Pennsylvania Supreme Court dated December 14, 1979, 10 Pa. Bull. 11, the Rules of Civil Procedure governing declaratory judgment actions were amended so as to make the new rules governing declaratory judgments effective as to pending actions. Plaintiff in this case amended its petition following the effective date of the new act so as to proceed thereunder. We conclude that the instant action is governed by the Declaratory Judgments Act, 42 Pa.C.S.A. §7531, and the Rules of Civil Procedure promulgated pursuant thereto, Pa.R.C.P. 1601-1604.

## II. STATEMENT OF FACTS

1. Plaintiff, Pennsylvania Power Company, is a public utility corporation organized under the laws of Pennsylvania and having a principal place of business at No. 1 East Washington Street, New Castle, Pa.

2. Pennsylvania Power Company is an owner and the operator of the Bruce Mansfield Power Plant in the Borough of Shippingport, Beaver County, Pa.

3. Pennsylvania Power Company is also the beneficial owner, through a series of agreements between Pennsylvania Power Company and the Dravo Corporation and the Dravo Corporation and Mr. Albert Stammelbach, of a parcel of land situate in Greene Township, Beaver County, Pa., known as the Pegg's Run Development Area.

4. Greene Township is a second class township organized under the laws of Pennsylvania and has currently in effect Ordinance No. 1-73 which prohibits the dumping and storage of certain mate-

rials, including ashes, within the township boundaries without first obtaining a permit for the same from the Board of Supervisors.

5. Pennsylvania Power Company applied to the Board of Supervisors for a permit for the use of the Pegg's Run Development Area as an alternate site for bottom ash disposal. The application was denied by the Board of Supervisors on September 6, 1977, and notice of such denial was received by the Pennsylvania Power Company on October 14, 1977.

6. Pennsylvania Power Company currently operates two coal-fired electrical generating units at the Bruce Mansfield Power Plant pursuant to a certificate of public convenience issued by the Pennsylvania Public Utilities Commission. Pennsylvania Power Company also has under construction a third coal-fired electrical generating unit at the Bruce Mansfield Power Plant which is scheduled to go into commercial operation in October of 1980, and for which Pennsylvania Power Company also has a certificate of public convenience issued by the Pennsylvania Public Utilities Commission. Each of these units consumes approximately 8,000 tons of coal per day, and each unit produces approximately 150 to 175 tons of bottom ash per day as a result of generating electricity.

7. If the bottom ash cannot be removed, the boiler must be shut down, which in turn shuts down the turbine generator, which means the production of electricity ceases at that unit. The bottom ash is a normal and necessary product of generating electricity, and there is no commercial use which can be made of the bottom ash at the site. Therefore, Pennsylvania Power Company must dispose of the bottom ash in an environmentally acceptable manner.

8. The primary method of bottom ash disposal currently utilized by Pennsylvania Power is to con-

tract for the removal of that ash with the Dick Corporation. The current contract runs from June 28, 1979 to December 31, 1984 and has two five-year options renewable at the discretion of Pennsylvania Power. The Dick Corporation subcontracts trucks to pick up the bottom ash at the plant and haul it to a disposal area in Hanover Township, Washington County, Pa., which is owned by the Bologna Coal Company and for which the Dick Corporation has the necessary Pennsylvania DER permit and local approvals. Dick Corporation hauls 30 to 35 truck loads per day, five days per week from the power plant to the disposal area, a distance of approximately 16 miles.

9. The disposal area comprises about 67 acres and has a life expectancy, based on current production, of 25 to 30 years. If for some reason, such as a drivers' strike, the trucks cannot operate out of the plant, the Dick Corporation has no other way of removing the bottom ash. If Dick Corporation's dumping permits were withdrawn, this would also affect its ability to remove the bottom ash.

10: The Pegg's Run Development Area is situated in a steep-walled valley with hills on either side, rendering it unusable for farming or any other use except possibly for mining. Pennsylvania Power Company has obtained a Solid Waste Disposal Permit from the Pennsylvania Department of Environmental Resources to use this area for disposal of bottom ash. Also at the time the property was acquired, Dravo Corporation, on behalf of Pennsylvania Power Company, secured a stream encroachment permit from the Department of Environmental Resources and secured approval of the United States Department of Agriculture and the Beaver County Soil Conservation District for erosion and sediment control plans.

### III. DISCUSSION

The issue in this case is whether the Pennsylvania Power Company, a public utility, is subject to the jurisdiction of Greene Township, a second class township, to regulate the use by the utility of a site within that township for industrial waste disposal.

The Public Utility Code vests in the Public Utility Commission the ". . . general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth." 66 Pa.C.S.A. §501(b). Accordingly, in order for a public utility to offer service in Pennsylvania, it must first obtain from the Public Utility Commission a certificate of public convenience. Section 1101, 66 Pa.C.S.A. §1101, provides:

"Upon the application of any proposed public utility and the approval of such application by the commission evidenced by its certificate of public convenience first had and obtained, it shall be lawful for any such proposed public utility to begin to offer, render, furnish, or supply service within this Commonwealth. The commission's certificate of public convenience granted under the authority of this section shall include a description of the nature of the service and of the territory in which it may.be offered, rendered, furnished or supplied."

Once a public utility is certified to offer service in Pennsylvania, the Public Utility Code imposes a duty on that utility to provide service and facilities of a particular character. Thus, section 1501, 66 Pa.C.S.A. §1501, provides in part:

"Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions,

and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interuptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. . . ."

Moreover, the code broadly defines "Facilities," in section 102, 66 Pa.C.S.A. §102, as:

"All the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility. Property owned by the Commonwealth or any municipal corporation prior to June 1, 1937, shall not be subject to the commission or to any of the terms of this part, except as elsewhere expressly provided in this part."

The Pennsylvania Supreme Court has recognized the exclusive jurisdiction of the Public Utility Commission in a long line of cases. In Duquesne Light Company v. Monroeville Borough, 449 Pa. 573, 580, 298 A. 2d 252 (1972), the court said, "This Court has consistently held, however, that the Public Utility Commission has exclusive regulatory jurisdiction over the implementation of public utility facilities," citing the Act of May 28, 1937, P.L. 1053, as amended, 66 P.S. §1101 et seq. [see now 66 Pa.C.S.A. §101 et seq.], and other cases therein. The reason for vesting such exclusive jurisdiction in the Public Utility Commission is explained by the Pennsylvania Supreme Court in the cases of

Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323, 336, 105 A. 2d 287 (1954), where the court said:

"If the power of the municipality were held paramount, the Commission could not compel the utility to provide adequate service or in anywise control the expansion or extension of the utility's facilities if an order of the Commission conflicted with action taken by any political subdivision of the State. This would mean the complete negation of the powers of regulation and control specifically given as a matter of public policy to the Public Utility Commission in the interest of state-wide public welfare."

The Superior Court of Pennsylvnaia likewise has held, in the case of Willits v. Pennsylvania Public Utility Commission, 183 Pa. Superior Ct. 62, 66, 128 A. 2d 105 (1956), as follows:

"The regulation of utilities, the rendering of adequate and efficient service, and the making of necessary changes rest, in the first instance, with the Commission. This control, in the interest of service to the public, transcends the legitimate objectives of any one of the political subdivisions of the Commonwealth."

The granting of exclusive jurisdiction to the Public Utility Commission is further supported by the legislature in the provisions of The Second Class Township Code of May 1, 1933, P.L. 103, sec. 101, as amended, 53 P.S. §65101 et seq., which, after granting certain powers to second class townships, provides that: "This act shall not repeal or modify any of the provisions of the Public Utility Law. . . ." 53 P.S. §67201.

The Commonwealth Court of Pennsylvania has interpreted this same part of The Second Class

Township Code to deny jurisdiction to a township to enforce an ordinance similar to Ordinance No. 1-73 in the instant case. In Warrington Township v. Richard R. Meade, 35 Pa. Commonwealth Ct. 112, 385 A. 2d 604 (1978), the court held that an ordinance requiring a permit to drill a well designed to produce in excess of ten thousand gallons of water a day could not be applied to the Warrington Water Company, a public utility under 66 Pa.C.S.A. §1102(17)(b). The court, after citing a line of cases, granting exclusive jurisdiction to the Public Utility Commission and noting that the water company had obtained the necessary certificate of public convenience, stated at 114-115:

"Whatever initial support might seem to be given the township's case by this authority [53 P.S. §65729, general power to regulate health] is dissipated by Section 2101 of The Second Class Township Code, 53 P.S. 67201, providing that nothing in The Second Class Township Code shall be construed to modify any provision of the Public Utility Law. Since the latter enactment, as the cases hereinbefore cited hold, gives exclusive regulatory jurisdiction to the Public Utility Commission, the township has none."

The rules of statutory construction support such a conclusion wherein they provide, 1 Pa.C.S.A. §1933:

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later

and it shall be the manifest intention of the General Assembly that such general provision shall prevail."

Therefore, the language of 53 P.S. §67201 must be construed as a specific exception to the general power to regulate the dumping of ashes set forth at 53 P.S. §65708.* ,

Furthermore, it is fundamental that "a municipal ordinance cannot be sustained to the extent that it is contrary to, or inconsistent with, a state statute. . . ." Western Pennsylvania Restaurant Association v. Pittsburgh, 366 Pa. 374, 381, 77 A. 2d 616, 620 (1951); Greater Greensburg Sewage Authority v. Hempfield Township, 5 Pa. Commonwealth Ct. 495, 502, 291 A. 2d 318 (1972). See also Chester County v. Philadelphia Electric Company, 420 Pa. 422, 218 A. 2d 331 (1966).

Since the Pennsylvania Supreme Court has held that the legislature in the Public Utility Code has granted exclusive jurisdiction over public utility facilities to the Public Utility Commission, and because The Second Class Township Code contains a specific provision that nothing in the code shall be construed to modify any provision of the Public Utility Law, Ordinance No. 1-73 of Greene Township must be held inapplicable to plaintiff.

Defendant has raised the question as to whether this proceeding raises an issue that is ripe for a declaratory judgment. We find that it is. The facts in this case indicate that the utility now has only one source where its large amount of daily waste bottom ash may be disposed. It is not unreasonable to expect that circumstances may occur that would

---

*Section 65708 was amended subsequent to the passage of section 67201, but the original section 65708 was enacted at the same time as §67201, in the Act of May 1, 1933, P.L. 103.

render the presently used site unavailable, and such occurrence would seriously impede the normal functioning and maintenance of the utility plant. Therefore, it is reasonable for the utility to provide for an alternative site.

Preparation of such a site requires extensive planning, many months of time and work, and an expenditure of large sums of money. Before such efforts are taken, the utility has requested the court in these proceedings to determine the issue of whether the township may stop the use of the site by continued refusal to grant a permit. We find that the declaratory judgment of this court on the effect of Greene Township Ordinance No. 1-73 will terminate the uncertainty giving rise to this proceeding; for that reason, this court will issue a declaratory judgment on the matter raised. This will effectively dispose of any controversy between the utility and the township that may arise out of attempted enforcement of Ordinance No. 1-73.

The township and its citizens are not without remedy if they believe that a particular manner of use by the utility of the property in question may injure their interests or rights. They may file a complaint with the Public Utility Commission pursuant to section 701 of the Public Utility Code, 66 Pa.C.S.A. §701 (previously 66 P.S. §1391): Warrington Township v. Meade, supra. The filing of such a complaint may result in the Public Utility Commission imposing restriction or limitations on the use of the property in question consistent with allowing the utility to fulfill its public service. Also any person whose personal or property interests are jeopardized or infringed upon by the use by the utility of the property in question may file an appropriate complaint in the courts.

We note that the declaratory judgment in this

case affects only the issue raised in this proceeding, i.e., that the Township of Greene has no power to impose *its* regulations on the use by a public utility of its facilities in the exercise of its certificate of public convenience.

## ORDER

And now, June 3, 1980, for the reasons set forth in the within opinion, it is hereby ordered, adjudged, and decreed that Greene Township has no jurisdiction to validly enforce Ordinance No. 1-73 against Pennsylvania Power Company.