# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Meghan Flynn, Gina Soscia,    :
James Fishwick, Glenn Jacobs,    :
Glenn Kasper and Alison L. Higgins,    :   No. 942 C.D. 2017
                  Appellants    :   Argued: October 18, 2017
                           :
          v.             :
                           :
Sunoco Pipeline L.P.         :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**           **FILED: March 26, 2018**

       In this appeal, Meghan Flynn, Gina Soscia, James Fishwick, Glenn Jacobs, Glenn Kasper and Alison L. Higgins (collectively, Plaintiffs) challenge an order of the Court of Common Pleas of Delaware County[1] (trial court) that sustained the preliminary objections of Sunoco Pipeline, L.P. (Sunoco) and dismissed Plaintiffs' complaint. Through their complaint, Plaintiffs sought to prevent Sunoco from constructing a new set of pipelines known as the Mariner East 2 pipeline (ME2) in Middletown Township (Township) through enforcement of the Township's Subdivision and Land Development Ordinance (SALDO) against Sunoco. Plaintiffs contend the trial court erred in: (1) sustaining Sunoco's preliminary objection alleging a lack of subject matter jurisdiction; (2) sustaining Sunoco's preliminary

---

[1] The Honorable Charles B. Burr, II presided.

objection alleging that Plaintiffs' attempt to enforce the SALDO against Sunoco is preempted by state and federal law; and, (3) sustaining Sunoco's preliminary objection alleging Plaintiffs failed to state a claim to enforce the SALDO. Upon review, we affirm.

## I. Background
### A. Sunoco I

As we explained in the companion case of Delaware Riverkeeper Network v. Sunoco Pipeline L.P., ___ A.3d ___ (Pa. Cmwlth., No. 952 C.D. 2017, filed February 20, 2018), 2018 WL 943041 (Delaware Riverkeeper), Sunoco is regulated as a public utility by the Pennsylvania Public Utility Commission (PUC) and is a public utility corporation. In re Sunoco Pipeline, L.P., 143 A.3d 1000 (Pa. Cmwlth.) (en banc), appeal denied, 164 A.3d 485 (Pa. 2016) (Sunoco I). The PUC regulates the intrastate movement of natural gas and petroleum products or service by Sunoco through pipelines, and not the actual physical pipelines conveying those liquids. Id. at 1004.

In Sunoco I, we set forth the following relevant factual background. Pursuant to the PUC's Orders, Sunoco has Certificates of Public Convenience (CPCs) that authorize it to transport, via its pipeline system, petroleum and refined petroleum products, including propane, from and to points within Pennsylvania. In 2012, Sunoco announced its intent to develop an integrated pipeline system for transporting petroleum products and natural gas liquids (NGLs) such as propane, ethane, and butane from the Marcellus and Utica Shales in Pennsylvania, West Virginia, and Ohio to the Marcus Hook Industrial Complex (MHIC) and points in between. Sunoco's various filings described the overall goal of the Mariner East

2

Project as an integrated pipeline system to move NGLs from the Marcellus and Utica Shales through and within the Commonwealth, and to provide take away capacity for the Marcellus and Utica Shale plays and the flexibility to reach various commercial markets, using pipeline and terminal infrastructure within the Commonwealth.

The Mariner East Project has two phases. The first phase, referred to as Mariner East 1 (ME1), was completed and utilized Sunoco's existing pipeline infrastructure, bolstered by a 51-mile extension from Houston, in Washington County, to Delmont, in Westmoreland County, to ship 70,000 barrels per day of NGLs from the Marcellus Shale basin to the MHIC.

Sunoco has begun work on the second phase of the Mariner East Project, known as ME2. Unlike ME1, which used both existing and new pipelines, ME2 requires construction of a new 351-mile pipeline largely tracing the ME1 pipeline route, with origin points in West Virginia, Ohio, and Pennsylvania. With the exception of some valves, ME2 will be below ground level.

Significant for further discussion, new ME2 construction will be parallel to and mostly within the existing right of way of the ME1 pipeline. Id. at 1008-09.

While ME1 was underway, Marcellus and Utica Shale producers and shippers advised Sunoco that there was a need for additional capacity to transport more than the 70,000 barrels of NGLs per day being transported by ME1. As a

3

result, Sunoco undertook to expand Mariner East Project capacity and developed the ME2 pipeline.

This expansion of the ME1 service will enlarge capacity to allow movement of an additional 275,000 barrels per day of NGLs, thereby allowing shippers from the Marcellus and Utica Shales to transport more barrels of NGLs through the Commonwealth to destinations within the Commonwealth, as well as to the MHIC for storage, processing, and distribution to local, domestic, and international markets. It is intended to increase the take-away capacity of NGLs from the Marcellus and Utica Shales and to enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both interstate and intrastate propane shipments and increase the amount of propane that would be available for delivery or use in Pennsylvania.

Sunoco sought and obtained PUC approval to provide intrastate service on the ME1 and ME2 pipelines. The PUC issued three final Orders in 2014 and two final Orders in 2015 confirming that Sunoco is a public utility corporation subject to PUC regulation as a public utility. The PUC also recognized that the service provided by both phases of the Mariner East Project is a public utility service.

As a result of the PUC's actions and through Sunoco's previously obtained CPCs, the PUC authorized Sunoco as a public utility to transport, as a public utility service, petroleum and refined petroleum products both east to west and west to east in the following Pennsylvania counties through which the Mariner East Project is located: Allegheny, Westmoreland, Indiana, Cambria, Blair,

4

Huntingdon, Juniata, Perry, Cumberland, York, Dauphin, Lebanon, Lancaster, Berks, Chester, and Delaware. Sunoco's CPCs apply to both ME1 service and to ME2 service, as it is an authorized expansion of the same service. Sunoco I.

## B. Current Litigation

As the trial court explained, in May 2017, Plaintiffs filed a complaint against Sunoco pursuant to Section 617 of the Pennsylvania Municipalities Planning Code (MPC),[2] along with a separately filed petition for injunctive relief. Through their complaint, Plaintiffs asserted Section 210-37 of the SALDO[3] applied to Sunoco's ME2 pipeline.

---

[2] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10617 ("Causes of action").

[3] Section 210-37 provides:

> § 210-37 Gas, petroleum and petroleum product pipelines.
> A. The minimum distance from a natural gas line to a dwelling unit shall be 75 feet or as may be required by the applicable transmission or distributing company, or as may be required by the applicable regulations issued by the Department of Transportation under the Natural Gas Pipeline Safety Act of 1968, [recodified in the federal Pipeline Safety Act, 49 U.S.C. §60101-60137], whichever is greater.
>
> B. When any petroleum or petroleum products transmission line traverses a subdivision or land development, the developer shall confer with the applicable transmission or distribution company to determine the minimum distance which shall be required between each proposed dwelling unit and the petroleum or petroleum products distribution lines. In no case shall there be a distance of less than 75 feet between a dwelling unit and a petroleum or petroleum products transmission line.
>
> C. No petroleum, petroleum products or natural gas transmission line shall be constructed in a subdivision or land development on less than a fifty-foot easement. Such lines shall be installed in the center of the easement and shall comply with all applicable federal and state laws and regulations.

Tr. Ct., Slip Op., 8/21/17, at 2 (emphasis omitted).

Plaintiffs further averred that they reside within 75 feet of the proposed ME2 pipeline. They asserted that, pursuant to Section 210-37 of the SALDO, ME2 easements must be a minimum of 50 feet wide and each pipeline must be no closer than 75 feet to a dwelling unit. Additionally, Plaintiffs contended the ME2 pipeline is required to be at the center of the easements. In acquiring easements, Plaintiffs averred, Sunoco putatively acted pursuant to the eminent domain authority conferred by the PUC. They also asserted Sunoco putatively acted pursuant to approvals granted by the Pennsylvania Department of Environmental Protection (DEP). Nonetheless, Plaintiffs averred Pennsylvania law does not confer pipeline siting authority on the PUC or DEP. Rather, Plaintiffs asserted the Township had legal authority to control the siting of pipelines through ordinances such as the SALDO.

Plaintiffs also averred: (1) the SALDO was adopted more than 50 years prior to Sunoco's announcement of the ME2 pipeline project; (2) at all pertinent times, Sunoco had actual or constructive knowledge of the SALDO's requirements, including the setback and easement requirements set forth in Section 210-37(B) and (C) of the SALDO; (3) DEP maps for the ME2 pipeline project show two pipelines routed through the Township that, in many locations, have at least one pipe that is less than 75 feet from residential dwelling units; (4) the distance from the nearest ME2 pipeline to their dwelling units is less than 75 feet; and, (5) this distance violates Section 210-37(B) of the SALDO, which states that in no case shall there be a distance of less than 75 feet between a dwelling unit and a petroleum or petroleum products transmission line.

6

Sunoco filed preliminary objections to Plaintiffs' complaint, asserting: (1) the trial court lacked subject matter jurisdiction over Plaintiffs' claims because the PUC has exclusive jurisdiction over the regulation of public utilities and public utility service, and the courts lack jurisdiction over collateral attacks on the PUC's decisions to authorize public utility service; (2) Plaintiffs' allegations were legally insufficient to state a claim upon which relief could be granted; (3) Plaintiffs lacked standing to bring suit under Section 617 of the MPC; (4) Plaintiffs' attempt to enforce the SALDO against Sunoco is preempted by state and federal law; and, (5) Sunoco's construction of the ME2 pipeline does not constitute subdivision or land development for purposes of the SALDO.

Ultimately, the trial court issued an order that sustained in part and overruled in part Sunoco's preliminary objections. In particular, the trial court: overruled Sunoco's preliminary objection alleging Plaintiffs lacked standing; sustained Sunoco's preliminary objections alleging a lack of subject matter jurisdiction; sustained Sunoco's preliminary objection alleging Plaintiffs' attempt to enforce the SALDO was preempted by state and federal law; and, sustained Sunoco's preliminary objection alleging Plaintiffs failed to state a claim to enforce Section 210-37 of the SALDO. As a result, the trial court dismissed Plaintiffs' complaint with prejudice. Plaintiffs appealed to this Court, and the trial court directed them to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which they did.

### C. Trial Court's Decision

In a subsequently filed opinion, the trial court explained that it found guidance in the Court of Common Pleas of Chester County's opinion and order in

7

Delaware Riverkeeper Network v. Sunoco Pipeline L.P. No. 2017-05040-MJ (C.P. Chester June 15, 2017), which this Court affirmed in Delaware Riverkeeper. To that end, the trial court determined Plaintiffs failed to establish that: (1) the trial court had subject matter jurisdiction over this suit; (2) the SALDO was not preempted by state and federal law; and, (3) they stated a cognizable claim to enforce Section 210-37 of the SALDO. The trial court explained that the finding that it lacked the power over this controversy necessarily foreclosed consideration of the other grounds Plaintiffs raised for relief.

Nevertheless, the trial court stated, the law is well-settled that the PUC has exclusive jurisdiction over the regulation of public utilities, including Sunoco, and that the Public Utility Code[4] preempts regulation of their location and renders efforts at local control invalid, even where the local regulation does not conflict with PUC regulations. Duquesne Light Co. v. Monroeville Borough, 298 A.2d 252 (Pa. 1972) (zoning regulations); Cty. of Chester v. Phila. Elec. Co., 218 A.2d 331 (Pa. 1966) (land development plans).

Moreover, the trial court stated, the only public utilities potentially subject to local zoning regulations are buildings. See Section 619 of the MPC, 53 P.S. §10619. The trial court explained that, Plaintiffs' admission that this case does not involve a building, but rather a pipeline, ended the trial court's inquiry into whether Plaintiffs' claims were preempted by state law. The trial court also stated, because Section 210-37 of the SALDO attempted to address pipeline safety issues, it was preempted by federal law.

---

[4] 66 Pa. C.S. §§101-3316.

8

In addition, the trial court rejected Plaintiffs' contentions that: (1) nothing in the cited statutory and case law explicitly foreclosed them from seeking to enforce the SALDO to achieve greater than the purported minimal safety standards provided; (2) a township possesses a fundamental right to assure the safety of its citizens through an ordinance such as the SALDO; and, (3) the PUC lacks the express power to regulate the siting of pipelines.[5]

Further, the trial court stated, because Section 210-37(C) of the SALDO specifically applied to a subdivision or land development, and the construction of the ME2 pipeline involved neither subdivision nor land development, the SALDO did not apply here.[6]

## II. Issues

On appeal,[7] Plaintiffs contend the trial court erred in: (1) sustaining Sunoco's preliminary objection alleging a lack of subject matter jurisdiction; (2)

---

[5] The trial court also stated, in light of the fact Plaintiffs' suit was neither an action nor a collateral action for monetary damages, the trial court lacked subject matter jurisdiction over it. Pettko v. Pa. Am. Water Co., 39 A.3d 473 (Pa. Cmwlth. 2012) (where administrative remedies are not adequate and complete, PUC's jurisdiction is not exclusive and action for damages may be brought in common pleas court).

[6] Finally, the trial court determined that, Robinson Township v. Commonwealth, 147 A.3d 536 (Pa. 2016); Robinson Township v. Commonwealth, 83 A.3d 901, 977 (Pa. 2013); and, Robinson Township v. Commonwealth, 52 A.3d 463 (Pa. Cmwlth. 2012), aff'd in part, rev'd in part, 83 A.3d 901 (Pa. 2013), relied on by Plaintiffs, were inapposite.

[7] We exercise *de novo* review of a lower tribunal's order sustaining preliminary objections in the nature of a demurrer. William Penn Sch. Dist. v. Dep't of Educ., 170 A.3d 414 (Pa. 2017). The scope of our review is plenary. Id. We must determine "whether, on the facts averred, the law says with certainty that no recovery is possible." Id. at 434. In conducting our review, "we accept as true all well-pleaded material facts set forth in the [complaint] and all inferences fairly deducible from those facts." Id. We will sustain preliminary objections "only when, based on the

9

sustaining Sunoco's preliminary objection alleging Plaintiffs' attempt to enforce the SALDO against Sunoco is preempted by state and federal law; and, (3) sustaining Sunoco's preliminary objection alleging Plaintiffs failed to state a claim to enforce the SALDO.

### III. Discussion
### A. Contentions

Plaintiffs argue that in 1961, the Township enacted an ordinance setting a minimum setback distance of 75 feet between petroleum product pipelines and residential dwellings. Plaintiffs assert the Township also mandated that new pipes be installed at the center of easements. They contend that this public safety ordinance predated Sunoco's 2014 announcement of the ME2 pipeline project by more than 50 years.

Plaintiffs maintain the ME2 plan shows that all of the proposed pipes are off-center and that all of the pipes will be well under 75 feet from Plaintiffs' homes in the Township. Therefore, Plaintiffs argue, violation of the SALDO is obvious.

Plaintiffs assert the MPC authorizes municipalities to enact both zoning ordinances and SALDO ordinances to promote health, welfare and public safety.

---

facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." Id. at 434-35 (citation omitted).

In addition, in reviewing a trial court's order denying a preliminary injunction, our review is highly deferential. We "examine the record only to determine 'if there were any apparently reasonable grounds for the action of the court below ....'" Reed v. Harrisburg City Council, 927 A.2d 698, 703 (Pa. Cmwlth. 2007) (citation omitted). Indeed, "[o]nly if it is plain that *no* grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will the decision be interfered with." Unionville-Chadds Ford Sch. Dist. v. Rotteveel, 487 A.2d 109, 111 (Pa. Cmwlth. 1985) (emphasis in original).

10

They contend that the MPC clearly covers ordinances that affect public utilities, provided that the ordinances do not repeal or conflict with public utilities.

Plaintiffs maintain the Township's SALDO affects the siting of pipes relative to residential dwellings. They argue the SALDO does not purport to prevent a public utility from locating petroleum product pipes within the Township; rather, it merely regulates the location in a reasonable fashion, with the obvious objective of protecting lives and property.

Plaintiffs further assert the Public Utility Code does not explicitly grant siting authority to the PUC nor does it forbid municipalities from exercising siting authority. They contend that, to date, the PUC has not seen fit to promulgate any regulations having to do with siting of pipes, even though it passed regulations governing the siting of electric energy facilities. In fact, Plaintiffs maintain, the PUC itself recently stated publicly that it does not have siting authority over pipelines.

In the absence of conflict between state and federal law on the one hand, and the SALDO on the other, Plaintiffs argue, no good reason exists not to permit the enforcement of the local ordinance. They assert that authorization for enforcement of the SALDO is found in Section 617 of the MPC. Plaintiffs contend Section 617 provides that persons who are substantially affected by violations of zoning ordinances and SALDOs may bring suit to enforce those ordinances.

Plaintiffs maintain they all brought suit under Section 617. Plaintiffs point out that, upon consideration of Sunoco's preliminary objections, the trial court

found that state law preempts local regulation of the siting of Sunoco's pipelines, even if the local regulation does not conflict with PUC's regulations. Plaintiffs argue that, under existing law, sustaining Sunoco's preliminary objections clearly was in error, the case should be remanded for Sunoco to file an answer to the complaint, and the trial court should be directed to hold a hearing on Plaintiffs' request for injunctive relief.

Sunoco responds that the trial court correctly dismissed Plaintiffs' complaint because the PUC's exclusive jurisdiction over the regulation of public utilities and their facilities deprives the courts of jurisdiction over Plaintiffs' claims to enforce the SALDO against Sunoco and preempts application of the SALDO to Sunoco's construction of the ME2 pipelines. Through the Public Utility Code, Sunoco argues, the General Assembly vested the PUC with exclusive jurisdiction over the regulation of public utilities and their facilities. As a result, Sunoco asserts, the courts cannot adjudicate matters that are within the PUC's jurisdiction, and municipalities cannot enforce ordinances against public utilities that infringe on the PUC's regulatory authority over public utilities. Sunoco contends Section 210-37 of the SALDO purports to regulate public utility facilities by establishing distance requirements and easement specification requirements for pipelines, and as such, the courts lack jurisdiction to enforce the SALDO against public utilities, and the SALDO is preempted as applied to public utilities such as Sunoco.

### B. Analysis

In Delaware Riverkeeper, this Court held that the plaintiffs, the Delaware Riverkeeper Network, the Delaware Riverkeeper, and residential landowners could not state a cause of action to have the West Goshen Township

Zoning Ordinance applied to Sunoco's ME2 pipeline, which is regulated by the PUC as a public utility service and facility. Thus, we affirmed the Court of Common Pleas of Chester County's dismissal of the plaintiffs' suit. For the reasons set forth in detail in <u>Delaware Riverkeeper</u>, we reach the same conclusion here with regard to Plaintiffs' cause of action to have the SALDO applied to Sunoco's ME2 pipeline. Accordingly, we affirm.

## IV. Conclusion

Based on our opinion in <u>Delaware Riverkeeper</u>, we affirm the trial court's order dismissing Plaintiffs' suit.

_____
ROBERT SIMPSON, Judge

Judge McCullough dissents.
Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Meghan Flynn, Gina Soscia,                         :
James Fishwick, Glenn Jacobs,                      :
Glenn Kasper and Alison L. Higgins,                :      No. 942 C.D. 2017
                      Appellants        :
                                           :
                   v.                            :
                                           :
Sunoco Pipeline L.P.                               :

# **O R D E R**

      **AND NOW**, this 26ᵗʰ day of March, 2018, the order of the Court of Common Pleas of Delaware County is **AFFIRMED**.


                                      _____

                                      ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Meghan Flynn, Gina Soscia, : 
James Fishwick, Glenn Jacobs, : 
Glenn Kasper and Alison L. Higgins, : No. 942 C.D. 2017
               Appellants : Argued: October 18, 2017
                : 
         v. : 
                : 
Sunoco Pipeline L.P. : 

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge

*OPINION NOT REPORTED*

**CONCURRING AND DISSENTING**
**OPINION BY JUDGE BROBSON**        **FILED: March 26, 2018**

      For the reasons set forth in my concurring and dissenting opinion in *Delaware Riverkeeper Network v. Sunoco L.P.*, ____ A.3d ___ (Pa. Cmwlth., No. 952 C.D. 2017, filed February 20, 2018) (Brobson, J., dissenting), I join in the majority's decision with respect to the merits. Rather than dismiss the action, however, I would remand the matter to the Court of Common Pleas of Delaware County with direction that it transfer the complaint to the Public Utility Commission (PUC) pursuant to Section 5103(a) of the Judicial Code, 42 Pa. C.S. § 5103(a) (relating to transfers of erroneously filed matters).

                                         _____
                                         P. KEVIN BROBSON, Judge

Judge McCullough joins in this concurring and dissenting opinion.