South Coventry Township and James Ottinger, Appellants *v.* Philadelphia Electric Company, Appellee.

Argued June 6, 1985, before Judges ROGERS, BARRY and PALLADINO, sitting as a panel of three.

290

Robert W. Lentz, Lentz, Cantor, Kilgore & Massey, LTD, for appellants.

Bernard Chanin, with him, Jeffrey S. Saltz, Wolf, Block, Schorr and Solis-Cohen, and John G. Kaufman, with him, Edward J. Hughes, Kaufman & Hughes, for appellee.

OPINION BY JUDGE BARRY, January 22, 1986:

This appeal stems from an order of the Chester County Court of Common Pleas which permanently enjoined and restrained South Coventry Township (township),[1] appellant, from enforcement of its zoning ordinances against Philadelphia Electric Company (PECO), appellee.

In early 1984 PECO was engaged in the final stages of preparing Unit 1 of its Limerick Nuclear Power Generating Station for commercial operation. In order to satisfy both the requirements of the Nuclear Regulatory Commission (NRC) and the responsibilities allocated to it by the Pennsylvania Emergency Management Agency (PEMA), PECO initiated the installation of two hundred siren towers, as part

___

[1] An additional named defendant in this proceeding and before the trial court was James Ottinger, South Coventry Township's zoning officer.

of a siren alert system, within an approximate ten-mile radius of the plant. The involved area is known as the "plume exposure pathway Emergency Planning Zone" (EPZ), and in the case of the Limerick Station embraced forty-two separate municipalities located within Montgomery, Berks and Chester Counties, including South Coventry Township.[2]

Following the installation of two of the siren towers in South Coventry Township, the township's zoning officer informed the landowners upon whose properties the structures had been erected that the siren towers were in violation of a township zoning ordinance. Shortly thereafter, the township began to issue multiple citations to PECO for violation of the ordinance. On March 9, 1984, PECO instituted an action to enjoin the township from enforcing its zoning ordinance, and seeking declaratory relief to the effect that the placement and operation of the siren alert system was exempt from the zoning ordinance.

[2] The installation of the siren alert system was undertaken pursuant to the requirement that a system be in place to notify the public in the EPZ of any radiological emergency. 10 C.F.R. §50.47(b)(5). The precise placement of the siren towers is determined by application of a computer model which takes into account the demographic and topographic features of the involved territory; the underlying goal of such precise placement is to provide the EPZ with an adequate warning sound level. Three of the two hundred locations were determined to be in South Coventry Township. Without a siren alarm system or its equivalent in the EPZ, a full power operating license will not be granted by the NRC. Determination of the adequacy of the system and of state and local off-site emergency preparedness standards is the responsibility of the Federal Emergency Management Agency (FEMA), which makes recommendations with respect to permits for nuclear facilities to the NRC. PEMA, in turn, allocates the responsibility of establishing the siren alarm system to the particular nuclear facility in annex E of its disaster operations plan. PEMA is under a statutory directive to establish the latter plan, which, significantly "may include provisions for: (i) Preparedness standards established by the Federal Emergency Management Agency." 35 Pa. C. S. §7313(i)(i):

Following the issuance of a preliminary injunction, hearings were held before the common pleas court. The principal issue before the court was whether PECO's operation of the siren alert system was subject to regulation under the township's zoning ordinance. The court determined that the Pennsylvania Municipalities Planning Code (MPC) was not authority for the regulation of PECO's operation of the system, finding specifically that the siren towers constituted facilities of a public utility and were hence under the exclusive regulatory jurisdiction of the Public Utility Commission. Noting that PECO would suffer irreparable harm were it not permitted to complete construction of its siren alert system, the court concluded by directing in its decree nisi of July 12, 1984, that a permanent injunction issue. After exceptions were filed and dismissed the township then initiated this appeal.

We note as a preliminary matter that the scope of our review in the controversy before us is limited to a determination of whether or not the trial court committed an error of law or a manifest abuse of discretion. *Rush v. Airport Commercial Properties, Inc.*, 28 Pa. Commonwealth Ct. 51, 52, 367 A.2d 370, 371 (1976). As we find that the trial court has based its opinion upon adequate grounds and correct legal interpretation, we affirm the order granting injunctive and declaratory relief and dismiss the appeal of the township.

While the township has not at any point asserted that it possesses an exclusive or plenary jurisdiction to regulate the operations of a public utility such as PECO, it has relied on section 619 of the MPC[3] to support its position in the present controversy. Following an enumeration of, among other things, the general

---

[3] Act of July 31, 1961, P.L. 805, *as amended*, 53 P.S. §10619.

powers of and methods by which municipalities are to enact, amend and repeal zoning ordinances,[4] the MPC includes the following provision:

> *Exemptions:* This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if upon petition of the corporation, the Pennsylvania Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public.

The township has seized upon this language and interpreted it as an implied grant of authority to zone PECO's siren alert system, arguing that in lieu of a successful petition to the PUC, any "structure" sought to be erected by a public utility is subject to the municipality's zoning regulations. As it is undisputed that PECO never submitted any such petition to the PUC, the township asserts that the siren towers are automatically subject to the zoning powers of the township.

This interpretation of Section 619, was, however, discredited long ago in *Duqesne Light Co. v. Upper St. Clair Township*, 377 Pa. 323, 105 A.2d 287 (1954). In *Duquesne Light,* a municipality attempted to enforce its zoning ordinance against a utility which wished to erect a transmission line between a new generating station and a distributing station. Following the grant of an injunction against the municipality, the latter, invoking the same statutory language then included in the First Class Township Law, 53 P.S. §19092-3110, proposed precisely the same argument as advanced by the township here—that as buildings alone were to be exempted from possible application of zoning laws, a

---

[4] 53 P.S. §§10601-10618.

general zoning power had been thereby granted to the township, which would enable it to regulate public utility "uses and structures." 377 Pa. at 333, 105 A.2d at 292. The *Duquesne Light* court expressly rejected this notion, based upon reasoning we find applicable to the present case.

Preceding the court's explicit rejection of the township's argument was its acknowledgement of *another* provision of the First Class Township Law, which then provided that "[the latter statute] was not to 'repeal or modify any of the provisions of the Public Utility Law' of 1937." 377 Pa. at 333, 105 A.2d at 291 (quoting 53 P.S. §19091-3502). The court noted likewise that the original version of the First Class Township Law, enacted in 1931, included exactly the same proscription with respect to its effect on the Public Service Company Law of 1913. *Id.* The court concluded that "long before first class townships ever acquired any zoning powers, the [legislature] had clearly expressed the policy of the Commonwealth to commit the regulation of public utilities to a commission of statewide jurisdiction. . . ." *Id.*

With this preemptive statute in mind, the court rejected the township's construction of Section 3110:

[The] exemption merely grants an *express power* (not contained at all in the section granting general zoning power) to zone with respect to buildings of a public utility company, subject to a determination by the commission that the present or proposed location of such buildings is not reasonably necessary for the convenience of [or] welfare of the public. This construction in no way modifies the Code, for it can be seen that the [Public Utility] Commission . . . is entrusted with the vital determination of necessity. We therefore conclude that the policy of the Commonwealth in entrusting to the Commission the

regulation and supervision of public utilities has excluded townships from the same field, and that no power in townships to enter that area can be read into the First Class Township Law *by implication.*

377 Pa. at 334-35, 105 A.2d at 292.

This reasoning must likewise control in this case. Just as the "building" exemption has survived in the MPC from its earlier inclusion in the First Class Township Law, so has the adjuration that the MPC "shall not repeal or modify any of the provisions of the 'Public Utility Law'...." 53 P.S. 11202.

Still, the township has attempted to distinguish *Duquesne Light,* arguing that it must be read narrowly to apply only to instances where the involved structure is directly related to the transmission or conveyance of a specific utility service. Such an argument, however, is unpersuasive for two reasons. First, based on our conclusion above, *Duquesne Light* establishes as an *enduring* principle that there is *no power* possessed by municipalities to zone with respect to utility structures other than buildings—and then, of course, only *after* the PUC has reached a determination with respect to the public convenience need for the building. And, we conclude, just as power lines were deemed structures in *Duquesne Light,* so must the siren towers be considered in the present case. Second, we must note that the same policy concern which underlay the *Duquesne Light* decision is present under the facts in this case. That policy, which rejects the parochial concerns of local interests, was clearly articulated in *Duquesne Light:*

It is clear that the proposed transmission line is necessary for the rendition of efficient service to the public and that that necessity transcends the legitimate objectives of any one of the political subdivision of the Commonwealth. . . .

[T]his is the reason why the General Assembly entrusted the regulation of public utilities to a commission of statewide jurisdiction. Local authorities are ill-equipped to comprehend the needs of the public beyond their jurisdiction . . . [and] those authorities, if they had the power to regulate necessarily would exercise that power with an eye toward the local situation and not with the best interests of the public at large as the point of reference.

377 Pa. at 335-36, 105 A.2d at 293.

This policy was succinctly reaffirmed by this court in *Commonwealth v. Delaware & Hudson Railway Co.*, 19 Pa. Commonwealth Ct. 59, 61, 339 A.2d 155, 157 (1975) ("public utilities are to be regulated exclusively by an agency of the Commonwealth with state-wide jurisdiction rather than by a myriad of local governments with different regulations").[5]

That this policy is in need of vindication in the involved controversy is well apparent. For PECO to comply with both federal and state requirements, it must erect its siren alert system in no less than forty-two separate municipalities; to possibly subject PECO to a miscellaneous collection of regulations upon its system would clearly burden and indeed disable it from successfully functioning as a utility.

The township has argued in the alternative that the siren towers are not properly to be considered uses or structures of a public utility, and hence exempt from local zoning, but are rather "Emergency Management

---

[5] *See also Duquesne Light Co. v. Monroeville Borough*, 449 Pa. 573, 580, 298 A.2d 252, 256 (1972) (PUC has exclusive regulatory jurisdiction over the implementation of public utility facilities); *County of Chester v. Philadelphia Electric Co.*, 420 Pa. 422, 425-26, 218 A.2d 331, 333 (1966) (regulation by a multitude of jurisdictions would result in "twisted and knotted" public utilities with consequent harm to general welfare).

Facilities." Pursuant to this characterization, the township argues that, because the siren alert system has not been "planned or approved" by PEMA, under the auspices of which the system was being constructed, the very construction of the system is unlawful and hence that the siren towers are, as if by default, subject to municipal zoning. This assertion was flatly rejected by the trial court, which found the siren alert system both to come clearly within the definition of a public utility "facility," and to be constructed pursuant to its responsibility under PEMA's disaster operations plan.[6] With these conclusions we are in agreement.

The Public Utility Code defines "facilities" as follows:

'Facilities.' All the plant and equipment of a public utility, including all tangible and intan-

---

[6] The disaster operations plan was promulgated by PEMA pursuant to its duties under the Emergency Management Code at 35 Pa. C. S. §7313, which provides, in pertinent part:

Section 7313. Powers and Duties. The agency shall have the following powers and duties:

(1) To prepare, maintain and keep current a Pennsylvania Emergency Management Plan for the prevention and minimization of injury and damage caused by disaster, prompt and effective response to disaster and disaster emergency relief and recovery. The plan may include provisions for:

(i) Preparedness standards established by the Federal Emergency Management Agency.

(ii) Commonwealth and local disaster emergency management responsibilities.

(iii) Assistance to Commonwealth and local government officials in designing emergency management plans and training programs.

(iv) Organization of manpower, chains of command, continuity of government in emergency situations and emergency operational principles.

Annex E of the plan, subtitled "Fixed Nuclear Facility Incidents," assigns among other things, as a "facility responsibility" the duty to "provide and maintain a siren-alert system within the plume exposure pathway EPZ. . . ."

gible real and personal property without limita-
tion, and any and all means and instrumental-
ities in any manner owned, operated, leased, li-
censed, used, controlled, furnished, or supplied
for, by, or in connection with, the business of
any public utility. . . .

66 Pa. C.S.A. §102. As a vital part of PECO's oper-
ation, it is clear to us that the siren tower components
of the siren alert system come within this definition,
and thus properly fall within the zoning-exempt oper-
ations of a public utility. Further, we find no merit in
the township's assertion that construction of the siren
alert system was undertaken in an unlawful manner,
as PECO was merely meeting the responsibilities allo-
cated to it by PEMA, and was doing so with full ac-
knowledgment and approval of the agency.[7]

---

[7] The township's specific argument is that PEMA has failed
to meet its responsibilities under the Emergency Management Code
and indeed under its own disaster operations plan. With reference
to the siren alert system, the township argues that it was PEMA,
and not PECO, that was the correct party to supervise and direct
the installation of the system. We find no merit in this assertion;
PEMA has been directed by the legislature to institute an emergency
management plan, and neither section 7313, nor the agency's own
annex E designates who is to perform the precise technical under-
taking of designing and constructing the system. Additionally,
PEMA was fully aware, receptive and knowledgeable of PECO's
design and installation of the system. As we conclude that the
siren towers are in any case facilities of a public utility, and hence
not subject to zoning, determination of the organization responsible
for the technical design of the siren alert system is not pertinent to
our analysis.

Similarly, we decline to resolve the issue, stressed so forcefully
by the township, that annex E of the disaster operations plan is
actually a "regulation," and is of no use for any purpose because
of PEMA's failure to file the plan under the Commonwealth Docu-
ments Law. See Act of July 3, 1968, P.L. 769, No. 240, Art. II
§208, 45 P.S. §1208. It may very well be that at least portions of
annex E rise to the level of resembling "regulations," see Newport
Homes, Inc. v. Kassab, 17 Pa. Commonwealth Ct. 317, 328, 332 A.2d
568, 574 (1975), but the issue herein involved is the legal efficacy

We will add that it is no doubt correct to consider the siren tower components of the siren alert system to be ''Emergency Management Facilities.'' Nevertheless, that the construction of the siren alert system was undertaken pursuant to PECO's responsibilities under the disaster operations plan and NRC requirements in no way detracts from the public utility facility status of the siren towers. It may well be that the components of the system possess a dual character, but this does not work to deprive them, as the township suggests, from being public utility facilities.

Although the township has also argued that the trial court erred in finding that PECO was entitled to injunctive relief, we find no error in this respect. While it has long been held that equity will not operate to provide relief where there is an adequate remedy at law, *St. Joe Minerals Corp. v. Goddard,* 14 Pa. Commonwealth Ct. 624, 324 A.2d 800 (1974), we agree with the trial court that in this case PECO is threatened with irreparable harm, and this principle will therefore not apply. *See Wood v. Goldvarg,* 365 Pa. 92, 74 A.2d 100 (1950). It is undisputed that PECO cannot obtain a full-power license from the NRC unless and until an appropriate warning system is in place and operable in the EPZ. The record also demonstrates that the plant will be ready to begin operations imminently, and the granting of injunctive and declaratory relief is appropriate where, as here, no other practical administrative procedure is available, and where PECO would face irreparable financial harm if numerous local jurisdictions attempt to apply zoning regulations to its operations.

of municipal zoning laws with respect to what we have determined to be public utility facilities. As the latter are, by their very nature, exempt from such zoning, the legal status of the plan, only *partially* pursuant to which the system was being installed in the first place, is likewise not dispositive of this case.

In addition to PECO's inability to obtain NRC licensing, it is evident that the application of the zoning ordinance by South Coventry Township alone would subject PECO to "exorbitant and oppressive penalties" in the form of multiple daily citations by the township; as the trial court found, when the erection of the third siren tower was commenced, PECO would be subject to fines of as much as $3,000 per day. In such instances equity may also operate, notwithstanding the presence of a legal remedy such as a challenging of the citations before a district justice. *See Duquesne Light,* 377 Pa. at 340-41, 105 A.2d at 295. The trial court, we conclude, committed no error when it issued the injunction in this case.

We have reviewed the record in this case and have found the township's contentions to be lacking in merit. Accordingly, the trial court is affirmed.

#### ORDER

Now, January 22, 1986, the order of the Court of Common Pleas of Chester County, dismissing exceptions to the granting of a permanent injunction in the above captioned case, is affirmed.