594 A.2d 834

**NEWTOWN TOWNSHIP and Patricia
K. Cochrane, Appellants,**

**v.**

**PHILADELPHIA ELECTRIC COMPANY, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 2, 1990.

Decided June 28, 1991.

Petition for Allowance of Appeal Denied Nov. 18, 1991.

Stephen B. Harris, Warrington, for appellants.

Donald Blanken, Philadelphia, for appellee.

Before CRUMLISH, President Judge, and T. DOYLE, PALLADINO, SMITH, and PELLEGRINI, JJ.

DOYLE, Judge.

Before us for consideration is the appeal of Newtown Township and Patricia K. Cochrane (collectively, Township) from an order of the Court of Common Pleas of Bucks County which granted Philadelphia Electric Company's (PECO) request for a preliminary injunction. The court's order enjoined the Township from enforcing a stop work order against PECO and authorized PECO to proceed with its construction of an electric power substation control building. We affirm.

The relevant underlying facts in this case were stipulated by the parties and set forth by the common pleas court as follows:

At the hearing of August 11, 1989, it was stipulated that plaintiff PECO is a public utility incorporated in Pennsylvania with its principal place of business at 2301 Market Street, Philadelphia, PA; that defendants are Newtown Township and Patricia A. [sic] Cochrane, its Zoning and Building Code Officer; that PECO is engaged in the business of supplying electric service to Newtown Township (a second class township) and areas adjacent

thereto; that PECO is proposing to construct a substation designated as the Linton Substation on the site located on the east side of Linton Hill Road where PECO's 230kV transmission line crosses that road in Newtown Township.

It was further stipulated that:

The proposed substation will consist of a control building to house control equipment for the operation of the substation equipment which will consist of one 230kV circuit breaker, two 230kV circuit switchers, two 230kV— 34 kV transformers, and eight 34 kV circuit breakers. The building to be constructed to house the control equipment will be a self-contained, self-supported, prefabricated metal enclosure with overall dimensions of approximately 14 ft. × 80 ft. × 12 ft. high. All of the substation equipment and building will be enclosed with an 8 ft. high fence.

The substation will be located within PECO's existing 230kV transmission line right of way. Ten acres of land will be devoted to the substation. PECO purchased the property for the transmission line right of way through several deeds dated July 10, 1959, July 16, 1959 and January 23, 1959. The existing 230kV transmission line will not be removed but will remain in service. One of the transmission line towers presently located on this site will be removed. The perimeter of the substation will be landscaped with shrubbery and trees. Counsel stipulated to paragraph 15 of the complaint which states that there was a 'demonstrated need' for the facility.

On August 1, 1988, PECO filed an application with the Pennsylvania Public Utility Commission, Docket No. A–110550F036, pursuant to the Pennsylvania Municipalities Planning Code, 53 Pa.C.S.A. Section 10619, for a finding of necessity for the situation of a one-story control building at the new substation. Newtown Township intervened in the P.U.C. proceeding, became a party, appeared through its solicitor and participated therein.

The P.U.C. proceedings culminated in an order entered by the Commission on April 10, 1989, granting PECO's application, with a finding that the P.U.C. *had jurisdiction* and that the proposed situation of the building was reasonably necessary for the service, accommodation and convenience of the public and complied with all applicable statutes and regulations to protect public natural resources. PECO and the township stipulated that certain conditions requested by the Township could be made part of the order. These conditions required (1) an increase of the site from 8 to 10 acres; (2) a 50 foot buffer yard; (3) fencing; and (4) restrictions against herbicides which would affect the ground water.

The P.U.C. order was not appealed by the Township.

None of the conditions required that PECO file a subdivision or land development plan with the township.

On or about June 12, 1989, PECO commenced construction at the proposed substation site.

On June 19, 1989, the Township of Newtown posted a notice at the construction site requiring PECO to stop work because PECO had failed to obtain land development or subdivision approval from the township. PECO filed suit objecting to the stop work order, and sought both a preliminary and a final injunction. (Emphasis in original.)

The gravamen of the Township's argument before the common pleas court against the issuance of the injunction was that Section 619 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10619, which exempts "any existing or proposed building ... used or to be used by a public utility corporation" from compliance with municipal zoning ordinances upon a finding by the Public Utility Commission (Commission) that the building is "necessary for the convenience or welfare of the public," does not apply to ordinances which require subdivision or land development approval. The court concluded, however, that jurisdiction

over the construction of the substation building lay with the Commission rather than the Township or its agencies.

Before this Court, the Township advances the same argument. Its position is based upon the "omission" from Article V of the MPC, entitled Subdivision and Land Development, of any exemption for buildings used or to be used by a public utility which corresponds to the zoning exemption found in Article VI, Section 619 of the MPC, quoted *supra*. The Township derives from this "omission" an implied power by which municipalities may regulate utility facilities through their subdivision and land development ordinances. However, this construction is contrary to the long line of appellate cases which have addressed the relationship between municipalities and public utilities.

In perhaps the earliest of these decisions, *York Water Co. v. York*, 250 Pa. 115, 95 A. 396 (1915), our Supreme Court addressed the relationship between the Public Service Company Law, Act of July 26, 1913, P.L. 1374,[1] and the version of the Third Class City Code then in effect.[2] Pursuant to provisions of that Code, the City of York by ordinance attempted to require the water company to install meters at the company's expense when requested to do so by any consumer. The water company obtained an injunction against enforcement of the ordinance and the city appealed. The Supreme Court affirmed the decree and articulated the following principle of law:

> There can be no reasonable doubt that the legislative intention was to make the Public Service Act the supreme law of the State in the regulation and supervision of public service corporations, and this being so, it follows as a necessary sequence that all laws inconsistent with the powers thus conferred must be held to be repealed or supplied thereby.... The Public Service Company Law was intended to establish a complete and uniform system throughout the State for the enforcement of such powers

1. The Public Service Company Law was a precursor of our present Public Utility Code, which is codified at 66 Pa.C.S. §§ 101–3315.

2. Act of June 27, 1913, P.L. 568, *formerly* 53 P.S. §§ 10811–11935.

as were conferred upon the Public Service Commission by that statute....

... Under the guise of a police regulation cities cannot undertake to determine the reasonableness of rates charged by public service corporations, nor can they prescribe regulations relating to the facilities, service and business of such corporations. These are the functions of the Public Service Commission and must be so regarded. The legislature has so declared and what the lawmaking body does within the limit of its powers becomes a rule of action binding upon all branches of government, state or municipal, and upon the people as well.

250 Pa. at 118–19, 95 A. at 397 (citations omitted).

This principle has been followed down to the present in an unbroken line of decisions. For example, in *Duquesne Light Co. v. Upper St. Clair Township*, 377 Pa. 323, 105 A.2d 287 (1954), where Upper St. Clair Township stopped the construction of the utility's new transmission towers by issuing a notice of work stoppage for want of a building permit, the township contended that a provision in the First Class Township Code,[3] which contained language virtually identical to that in Section 619 of the MPC cited herein, impliedly conferred power upon townships to regulate public utilities with respect to "uses and structures." The township argued that because "buildings" alone were exempted from the township's general power to zone where found "reasonably necessary for the convenience or welfare of the public" by the Commission, it should be inferred that uses and structures other than buildings are subject to that power. The Court rejected that contention and held ·that the township code provision merely granted an express power to zone with respect to public utility company buildings where the Commission had determined that the present or proposed location of such buildings was *not* reasonably necessary for the convenience or welfare of the public. The Court held:

3. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101 through 58502.

We therefore conclude that the policy of the Commonwealth in entrusting to the Commission the regulation and supervision of public utilities has excluded townships from the same field, and that no power in townships to enter that area can be read into the First Class Township Law *by implication.* Unless the legislature has given an *express* grant of power to townships, the Commonwealth's own expressed policy on the subject is undiminished and supreme.

*Id.,* 377 Pa. at 334–35, 105 A.2d at 292 (emphasis in original).

The Supreme Court subsequently articulated the rationale behind the Commission's role as the sole regulator of public utilities in *Chester County v. Philadelphia Electric Co.,* 420 Pa. 422, 218 A.2d 331 (1966). Therein the Court stated:

The necessity for conformity in the regulation and control of public utilities is as apparent as the electric lines which one views traversing the Commonwealth. If each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state. It is for that reason that the Legislature has vested in the Public Utility Commission exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utilities facilities.

*Id.,* 420 Pa. at 425–26, 218 A.2d at 333.

The reasoning in these decisions has been followed and reaffirmed by this Court in *Commonwealth v. Delaware and Hudson Railway Co.,* 19 Pa.Commonwealth Ct. 59, 339 A.2d 155 (1975), wherein we held that Section 619 of the MPC did not authorize local governments to regulate public utilities in any manner which infringes upon the power of the Commission to so regulate, and in *South Coventry Township v. Philadelphia Electric Co.,* 94 Pa.Commonwealth Ct. 289, 504 A.2d 368 (1986), wherein we noted that to subject PECO to a miscellaneous collection of local regulations would unduly burden and indeed disable it from

successfully functioning as a utility. Based upon these decisions, we conclude that it is clear that no "implied" power exists in the MPC which would allow the Township to regulate PECO through its subdivision and land development ordinance.

The Township contends, however, that the decisions cited *supra* are distinguishable from the case at bar in that none of them concern a subdivision ordinance, and that this case is thus one of first impression in the Commonwealth. It would distinguish the instant case from those decisions dealing with zoning regulations based upon the differing purposes of zoning and subdivision ordinances, to wit: a zoning ordinance controls the actual use of land and a subdivision ordinance is concerned with the health, safety and welfare of the public once the use of the land has been decided. It is within the ambit of the protection of the health, safety and welfare of its citizens that the Township is here attempting to make PECO comply with its subdivision and land development ordinance by insisting that a catch basin be provided on the site of its substation to alleviate storm water runoff.

We believe, however, that in this case any distinction between zoning and subdivision regulations is one without a difference. Section 619 of the MPC provides that it is the Commission's responsibility to ensure that the municipality in which the proposed building is located be provided with notice of the public hearing and an opportunity to be heard, and to otherwise exercise the rights of a party to the proceeding. It is undisputed that the Township was afforded such an opportunity in this case, and its stipulated conditions were entered as part of the Commission's order which found a public necessity. It is equally undisputed that the Township failed to request that the Commission require PECO to file a subdivision plan or to build a catch basin.[4]

4. The Township's contention that it can protect its citizens only through its subdivision ordinance was answered by the Supreme Court in *Chester County* as follows:

Accordingly, based on the above, the order of the common pleas court is affirmed.[5]

[I]f the County of Chester and its Board of Commissioners believe that [the regulatory] machinery somehow impairs public utilities services in Chester County or works to the harm of the inhabitants of Chester County, their remedy resides in asking the Public Utility Commission to provide regulations which will protect Chester County or they may apply directly to the Legislature for necessary amendments to the Public Utility Law. It may not, however, of its own volition throw a monkey wrench into that machinery with the thought that this may remedy a defect in the statewide mechanism. 420 Pa. at 426, 218 A.2d at 333. *See also, Duquesne Light Co. v. Monroeville Borough,* 449 Pa. 573, 298 A.2d 252 (1972) (Commission is the appropriate forum for the adjudication of public utility facilities within the Commonwealth). In this regard, we note that Section 701 of the Public Utility Code, 66 Pa.C.S. § 701, provides that any person or municipal corporation may file a complaint with the Commission regarding the actions of any public utility.

5. We take note that the Township argued this case *solely* on the basis of the provisions of the Pennsylvania Municipalities Planning Code and the omission from Article V of the MPC of language that would exempt public utilities from its purview. Article V of the MPC deals with all phases of land development and the subdivision thereof and sets forth in Section 503, 53 P.S. § 10503, the permissible subjects of a subdivision and land development ordinance. Such subjects could include, *inter alia,* provisions for acceptable standards of street construction and the lay-out of streets; street lighting; provisions for utility easements; provisions requiring the public dedication of land for public use; provisions "for encouraging the use of renewable energy systems and energy-conserving building design." These are but a few of the many specifically enumerated.

At no point in the Township's case did it ever assert that its Subdivision and Land Development Ordinance of 1985 was enacted pursuant to a county storm water management plan pursuant to Pennsylvania's Storm Water Management Act (Act), Act of October 4, 1978, P.L. 864, *as amended,* 32 P.S. §§ 680.1–680.17, nor did it ever assert that PECO was in violation of provisions of *any* ordinance enacted pursuant to that Act. Although the Department of Environmental Resources (DER) has published Storm Water Management Guidelines (approved by the General Assembly on May 14, 1985) pursuant to Section 14 of the Act, nowhere in the record of this case is there any evidence that Bucks County and the Township have adopted ordinances pursuant to those guidelines, the County's storm water plan (if it has one), or any other provision of the Act. As a matter of fact, the Township did not even place into evidence its Subdivision and Land Development ordinance. The Stop Work Order posted by the Township at PECO's construction site on June 19, 1989, recites only that PECO is in violation of "THE NEWTOWN TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE OF 1985— FAILURE TO OBTAIN A LAND DEVELOPMENT." No particular

COLINS, J., did not participate in the decision in this case.

PELLEGRINI, J., concurs in the result only.

## ORDER

NOW, June 28, 1991, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.

article or section of the ordinance was specified nor has the Township, during the entire history of this litigation, specifically addressed what section of its ordinance has been violated.

Section 15 of the Act, 32 P.S. § 680.15, pertinently provides:

Civil remedies

(a) Any activity conducted in violation of the provisions of this act or of any watershed storm water plan, regulations or ordinances adopted hereunder, is hereby declared a public nuisance.

(b) Suits to restrain, prevent or abate violation of this act or of any watershed storm water plan, regulations or ordinances adopted hereunder, may be instituted in equity or at law by [DER], any affected county or municipality, or any aggrieved person....

If the Township has a cause of action under the Act, it has not presented it in this case.