IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Waterford Township, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 306 C.D. 2021 |
| | : | Argued: February 7, 2022 |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE DUMAS                                                    FILED: April 21, 2022


Petitioner Waterford Township (Township) seeks review of the Declaratory Order entered on February 19, 2021, by the Pennsylvania Public Utility Commission (Commission). In its Declaratory Order, the Commission rejected certain fees authorized by the Township on the ground that these fees are preempted by the Public Utility Code (Code).[1] The Commission relied upon our Supreme Court's decision in *PPL Electric Utilities Corporation v. City of Lancaster*, 214 A.3d 639 (Pa. 2019) (*City of Lancaster*), which reaffirmed the General Assembly's intention wholly to occupy the field of utility regulation at the state level. Upon review, however, we disagree with the Commission's conclusion that *City of Lancaster* mandates preemption of the Township's fees as impermissible utility regulation. Further, pursuant to Pennsylvania's Business Corporation Law of 1988 (BCL)[2] and The Second Class Township Code (SCTC),[3] the Township may impose

---

[1] 66 Pa.C.S. §§ 101-3316.
[2] 15 Pa.C.S. §§ 1101-4162.
[3] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

reasonable permitting fees for entry onto its public rights-of-ways (ROWs). Accordingly, the Commission lacked authority to prohibit these fees, and we are constrained to reverse its Declaratory Order.

**Background**

The relevant facts are not in dispute. The Township is a township of the second class, located in southern Erie County, Pennsylvania. It is the local governmental authority that bears responsibility for the maintenance of the streets, highways, and/or other public ways of the Township. Armstrong Telecommunications, Inc. (Armstrong) is a certificated public utility providing telecommunications services. It is in the process of installing fiber optic cable in public ROWs in western Pennsylvania.

Armstrong applied to the Township for road occupancy permits for fifteen ROW locations. In October 2019, the Township issued Armstrong the permits with the condition that Armstrong pay related permitting fees, including an application fee ($50.00), inspection fee ($250.00), location fees ($10.00 or $20.00),[4] and a refundable bond ($500.00) for each of the 15 locations. In sum, the Township sought $4,690 in nonrefundable fees and $7,500 in refundable bond fees.

On November 12, 2019, Armstrong filed a Petition for Declaratory Order, asking the Commission to declare that, as a public utility providing certificated services under the Commission's jurisdiction, Armstrong need not pay the permitting fees charged by the Township. In response, the Township acknowledged Armstrong's right to enter upon public ROWs in order to place public

---

[4] The location fees varied based on the location type. At 11 sites, the Township levied a $10.00 fee for an opening in the ROW outside of pavement and shoulder. At the other four sites, the Township levied a $20.00 fee for a utility pole.

2

utility facilities but averred that the BCL and the SCTC empowered the Township to impose reasonable fees for such right of entry. Further, the Township sought to distinguish its fees from the disputed maintenance fees at issue in *City of Lancaster*.

In a split decision, the Commission determined that the Township application fee was not preempted by the Code but instead governed by the BCL. Commission Order, 2/19/21, at 8, 12. Based on its interpretation of *City of Lancaster*, the Commission further determined that the inspection of public utility facilities fell under its exclusive jurisdiction. *Id.* at 8. Therefore, while it recognized that the Township's fees were not identical to those in *City of Lancaster*, the Commission determined that the pole inspection fees and site inspection fees were preempted. *Id.* at 9-11. Finally, the Commission declined to address whether the "outside of pavement and shoulder" inspection fee or the refundable bond fee came under the Commission's exclusive jurisdiction. *Id.* at 12. According to the Commission, there was not sufficient evidence in the record to determine whether these fees are preempted under the Code. *Id.* [5,6]

### The Township's Claims on Appeal

The Township first contends that the Commission lacked jurisdiction to adjudicate this case because its permitting fees were expressly authorized by the General Assembly in the BCL and the SCTC. *See* Township Br. at 4, 22-24. As

---

[5] In our view, the Commission had sufficient information to address the "outside of pavement and shoulder" inspection fee, which is simply another site inspection fee, like the pole inspection fee. However, neither the Township nor Armstrong have appealed the Commission's failure to rule on this fee.

[6] In dissent, Chairman Gladys Brown Dutrieuille interpreted *City of Lancaster* more narrowly. *See* Statement of Chairman Dutrieuille, 2/4/21. In her view, the Commission lacked such exclusive jurisdiction to preempt any local inspection and location requirements, particularly where those local requirements did not constitute concurrent regulation of a public utility provider. *Id.* at 1-2.

3

such, the Township asserts, a public utility should raise any objection to local permitting fees before a court of common pleas. *Id.* at 25.

The Township also asserts that the Commission erroneously extended the Supreme Court's holding in *City of Lancaster* to invalidate the Township's permitting fees. *See* Township Br. at 4, 25-27. According to the Township, the Supreme Court considered only whether the Code preempted a local government from charging a public utility a recurring maintenance fee for its occupancy of a ROW and not whether a local government could impose one-time permitting fees for entry onto a ROW. *See id.* Thus, the Township maintains, while *City of Lancaster* is instructive, we cannot infer that the Code preempts the Township from collecting reasonable permitting fees. *See id.*

Finally, the Township contends that Section 1511(e) of the BCL, 15 Pa.C.S. § 1511(e), and Section 2322 of the SCTC[7] specifically authorize the Township to collect reasonable permitting fees. *See* Township Br. at 4, 23-25, 27-31. The Township rejects the Commission's assertion that its permitting fees are preempted by the Code. *Id.* at 29-30. Rather, according to the Township, its fees are permissible because the BCL and the SCTC provide more specific and more recent authority that insulates local government from the Code's preemptive force. *See* Township Br. at 31-33.[8]

---

[7] Section 2322 was added by the Act of November 9, 1995, P.L. 350, 53 P.S. § 67322.

[8] In support of its assertion that its fees are reasonable, the Township further notes that its fees are consistent with Pennsylvania Department of Transportation regulations. *See* Township Br. at 27 (citing 67 Pa. Code §459.4). We do not consider whether the Township's fees are reasonable as that is a question for a court of common pleas in the first instance.

4

Proceeding from settled authority that the General Assembly has field preempted all other state and local laws purporting to regulate public utilities, the Commission attempts to reframe the issue before us. Whereas the Township seeks to justify its permitting fees as something incidental to the application process granting a utility entry onto a public ROW, the Commission casts the Township fees as an attempt to regulate public utility facilities. *See, e.g.*, Commission Br. at 31 (asserting that the Code preempts the Township from inspecting "utility facilities"). There is ample support for the Commission's arguments. *See id.* at 18-26 (reviewing case law holding that the Code field preempts all other utility regulation in Pennsylvania), 26-31 (discussing several provisions of the Code authorizing the Commission to inspect utility facilities).

The Commission further disputes the Township's interpretation of *City of Lancaster*, asserting that the Township's attempt to distinguish its permitting fees from the continuing maintenance fees disallowed by the Supreme Court is erroneous. *See* Commission Br. at 41. The Commission clarifies that it did not preempt the Township fees by equating them to the maintenance fees at issue in *City of Lancaster* but rather because they were imposed specifically for the purpose of inspecting public utility facilities. *Id.* at 44-45.

Finally, the Commission contends that a proper interpretation of Section 1511(e) of the BCL and Section 2322 of the SCTC reveals no conflict between those laws and the Code. Commission Br. at 34. According to the Commission, these provisions merely require that a public utility obtain a permit

---

[9] The Commission does not address the Township's assertion that the Commission lacked authority to adjudicate this dispute. *See generally* Commission Br. Additionally, we have reordered the Commission's arguments to coincide with the Township's presentation of issues.

prior to installing its facilities in a public ROW but that this local permitting power is limited by the Commission's exclusive jurisdiction. *Id.* at 37-38. Regarding Section 2322, the Commission points to a savings clause enacted contemporaneously and confirming that the General Assembly intended to leave the preemptive force of the Code intact. *Id.* at 38-40 (discussing Section 3701(d),[10] which provides "[t]his act does not repeal or modify any of the provisions of 66 Pa.C.S. (relating to public utilities)[.]" 53 P.S. § 68701(d)).

## Discussion

Our review is limited to whether the Commission's findings are supported by substantial evidence, whether the Commission has committed an error of law, and whether its decision has violated constitutional rights. *See McCloskey v. Pa. Pub. Util. Comm'n*, 225 A.3d 192, 202 (Pa. Cmwlth. 2020). We defer to the Commission's interpretation of the Code unless its interpretation is clearly erroneous. *See id.* On issues of law, however, the standard of our review is *de novo*, and the scope of our review is plenary. *Coal. for Affordable Util. Servs. & Energy Efficiency in Pa. v. Pa. Pub. Util. Comm'n*, 120 A.3d 1087, 1095 (Pa. Cmwlth. 2015). An issue regarding state law preemption presents a question of law. *See Nutter v. Dougherty*, 938 A.2d 401, 412 n.20 (Pa. 2007).

### 1. Regarding the Commission's Jurisdiction

Initially, we reject the Township's contention that the Commission lacked jurisdiction to adjudicate this case. The Commission is empowered to issue declaratory orders to terminate controversy or uncertainty. 66 Pa.C.S. § 331(f). Recognizing tension between the legal authority cited by the Township for its permitting fees and the Supreme Court's recent decision in *City of Lancaster*, which

---

[10] Section 3701 was added by the Act of November 9, 1995, P.L. 350, 53 P.S. § 68701(d).

6

rejected a municipality's attempt to defray its ongoing maintenance costs, the Commission determined that a declaratory order was appropriate to provide guidance on whether the Township's proposed fees were subject to preemption. *See* Commission Order at 7. The fee dispute between the Township and Armstrong presents a real controversy, and the Commission was within its sound discretion to address the dispute and eliminate uncertainty surrounding the parties' legal rights. 66 Pa.C.S. §§ 331(f), 701; *Cnty. of Chester v. Phila. Elec. Co.*, 218 A.2d 331, 332-33 (Pa. 1966) ("[J]urisdiction in matters concerning the relationship between public utilities and the public is in the [Commission.]") (citation omitted); *see also, e.g.*, *Borough of Olyphant v. Pa. Pub. Util. Comm'n*, 861 A.2d 377, 382-83 (Pa. Cmwlth. 2004) (recognizing a definite controversy where a borough sought to prevent a certificated utility company from providing services within borough limits).

## 2. Impact of *City of Lancaster*

Turning to the Township's substantive arguments, we recognize, as did the Commission, that there is tension between the exclusive authority of the Commission to regulate public utilities pursuant to the Code and certain provisions, adopted by the General Assembly in other contexts, that appear to grant local governments authority to administer and control access to their public ROWs. In our view, our Supreme Court's recent decision in *City of Lancaster* is informative.

In that case, the City of Lancaster (the City) enacted an ordinance purporting to "superimpose municipal requirements upon state-regulated utilities[.]" *City of Lancaster*, 214 A.3d at 641. There were four subsections of the ordinance at issue, three of which purported to give the City authority to regulate public utility facilities, including (1) conducting inspections to determine whether utilities were in compliance with the Code, (2) directing utilities to move their facilities within the

7

public ROW consistent with applicable Commission regulations, and (3) fining utilities for violations of City ordinances. *See id.* at 642. The fourth authorized annual maintenance fees for the occupancy and use of its ROWs. *Id.*

PPL Electric Utilities Corporation (PPL) challenged the ordinance on the grounds that its provisions were preempted by the Code and that the City had exceeded its authority under the BCL and the Pennsylvania Municipalities Planning Code.[11] *Id.* After considering principles of preemption and recognizing the sweeping authority of the Commission under state law, this Court, sitting *en banc*, entered judgment against the City as to its inspection, compliance, and enforcement provisions, but upheld the City's authority to impose a maintenance or occupancy fee. *Id.* at 643-47.

Upon review, the Supreme Court largely agreed with our analysis but rejected our conclusion that a maintenance fee was a proper exercise of municipal police powers. *Id.* at 659. The Court reasoned that the maintenance fee "reflect[ed] the regulatory expense of overseeing utilities' conduct within [the City's] jurisdiction." *Id.* According to the Court, "the costs [associated with maintaining ROWs] are materially congruent to the state-level costs embedded in the state tariff that utilities already bear." *Id.* Therefore, the Court concluded, "one cannot tenably maintain that a municipal maintenance fee can be understood as anything but [utility regulation]." *Id.*

The Supreme Court did not specifically address the recurring nature of the City's maintenance fee. However, we cannot ignore the context within which the Court arrived at its decision. PPL had argued before this Court, and again before the Supreme Court, that the City's annual maintenance fee was redundant with the

---

[11] *See* Act of July 31, 1968, P.L. 805, No. 247, *as amended*, 53 P.S. §§ 10101-11202.

8

annual assessment paid to the Commission for regulatory expenses. *See id.* at 646, 659. While the Court endorsed this comparison, we do not infer that a "one-time" maintenance fee would survive the Court's scrutiny. Rather, the Court indicated that it was the regulatory purpose and effect of the City's maintenance fee that brought it within the preempted field of utility regulation.

The Supreme Court also did not consider whether local permitting fees, such as those at issue in this matter, were subject to preemption. Recognizing that Section 1511(e) of the BCL vested some authority in local government, PPL had conceded that the City could impose reasonable fees associated with the permitting process. *Id.* at 658. Thus, the issue of local permitting fees was not squarely before the Court. Nevertheless, the Court cautioned that the scope of Section 1511(e) was limited to permitting and reasonable regulations conditioning "*entry* into rights of way[.]" *Id.* (emphasis in original).

We may derive several conclusions from *City of Lancaster*. First, it remains beyond dispute that the General Assembly has field preempted all state and/or local laws that purport to regulate public utilities.[12] Second, the Township's focus on the recurring nature of the maintenance fee disallowed in *City of Lancaster* is misplaced. Rather, it was the regulatory purpose or effect of the maintenance fee that brought it within the preempted field. In other words, if a local governmental authority is preempted from enacting any ordinance that purports to regulate a public

---

[12] We need not belabor this point. There are three types of preemption: (1) express preemption, when the legislature has expressly stated its intention to displace local regulation; (2) conflict preemption, when a local regulation would conflict with the operation of state law; and (3) field preemption, when the state has implicitly but completely occupied the regulatory field in question. *See City of Lancaster*, 214 A.3d at 649. With field preemption, "the state has retained all regulatory and legislative power for itself[,] and no local legislation in that area is permitted." *Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587, 593 (Pa. 2011) (citation omitted).

utility, it matters not at all if that ordinance authorizes fees that recur periodically, at the discretion of the local authority, or merely once. Those fees are preempted by the Code. Finally, although local permitting fees were not at issue, the Court signaled limited authority resides in local governments to control access and entry onto ROWs through a permitting process.

### 3. Section 1511(e) of the BCL and Section 2322 of the SCTC

Directing our attention to Section 1511(e) of the BCL and Section 2322 of the SCTC, the Township asserts that the General Assembly has authorized it to collect reasonable permitting fees and that such fees do not constitute utility regulation. We agree.[13]

Section 1511(e) of the BCL provides that a public utility has the right to enter upon and occupy public ROWs so that it may provide utility services. 15 Pa.C.S. § 1511(e). However, "[b]efore entering any [ROW], the public utility corporation shall obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the governmental authority having responsibility for the maintenance thereof." *Id.* Similarly, Section 2322 of the

---

[13] We agree that the General Assembly has authorized the Township to impose reasonable permitting fees. However, we do not find persuasive the Township's argument, rooted in principles of statutory construction, that the BCL and the SCTC provide more specific and more recent authority that insulates a local government from the Code's preemptive force. *See* Township Br. at 31-33 (citing 1 Pa.C.S. §§ 1933 (providing that a more specific provision shall prevail over a general provision), 1936 (providing that "the statute latest in date of final enactment shall prevail")). The General Assembly has granted the Commission exclusive authority to inspect the facilities of certified public utilities. *See* 66 Pa.C.S. §§ 506, 1501. Without question, and most recently in *City of Lancaster*, our Supreme Court has recognized that the General Assembly has field preempted all state and/or local laws that purport to regulate public utilities. 214 A.3d at 652. That the General Assembly may have enacted the BCL more recently than the Code does not undermine its clear intent to occupy the field of utility regulation. Further, and as noted by the Commission, the SCTC clearly states that it does not repeal or modify any provisions of the Public Utility Code. *See* 53 P.S. § 68701(d).

10

SCTC authorizes a township to condition access to its ROWs upon payment of application and inspection fees. 53 P.S. § 67322 ("The township shall collect a fee as determined by the Department of Transportation for processing the application and another fee for making the inspection.").

The Comment to Section 1511(e) clarifies that the reference to permits is "a codification of the prior law relating to the time and manner of opening a street, etc., and is not intended to imply a power to decide whether or not, and by whom, a type of utility service may be offered by means of the contemplated facilities." 15 Pa.C.S. § 1511, Comment (citation omitted). Thus, any further conditions must be limited to purely local concerns, such as the time and manner of entry. Although Section 2322 provides that a township may impose "conditions, restrictions[,] and regulations" upon applicants, we think it reasonable to interpret this provision as subject to similar limitations as the BCL, particularly in light of the SCTC savings clause.[14] In our view, such limited authority does not constitute regulation of a public utility. *See City of Lancaster*, 214 A.3d at 658; *see also Pa. Power Co. v. Township of Pine*, 926 A.2d 1241, 1251 (Pa. Cmwlth. 2007) (recognizing that a public utility corporation remains subject to local street occupancy regulations).

The Commission readily concedes that the BCL and the SCTC authorize the Township to impose permit fees for access to its ROWs. Commission Br. at 42. Moreover, the Commission suggests that these provisions do not conflict with the Code. *See id.* at 34. Notably, the Commission has not identified any "conditions, restrictions[,] and regulations" proposed by the Township that would exceed the limitations we recognize or that would constitute utility regulation. Our review of the Township's permits confirms that the terms and conditions set forth

---

[14] Section 3701(d) provides that the SCTC "does not repeal or modify any of the provisions of 66 Pa.C.S. (relating to public utilities[.])" 53 P.S. §68701(d).

11

therein merely require that a permittee timely commence and complete its work or be subject to further fees. *See* Armstrong Petition for Declaratory Order, 11/12/19, Exhibit B (Township Permits). This is consistent with the limitations identified above.

We also reject the Commission's attempt to recast the Township's inspection and location fees as the inspection of public utility facilities. Clearly, they are not maintenance fees, nor is there any reason to suspect their purpose is to facilitate inspection of utility facilities for Code compliance or enforcement of Code regulations. Simply, if a public utility applies for access to a particular ROW, the local government responsible for maintaining the ROW may confirm by inspection that the applicant has acted in conformity with its application. The Township's inspection and location fees enable this confirmation. In our view, they are permissible.

## Conclusion

Because we discern neither regulatory purpose nor effect in the Township's permitting fees, they are not preempted by the Code. Pursuant to the BCL and the SCTC, the Township may impose reasonable permitting fees for access onto its ROWs, subject to any challenge to their reasonableness. Accordingly, we reverse the Commission's Declaratory Order.

_____
LORI A. DUMAS, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Waterford Township, : 
              Petitioner : 
               : 
          v. :   No. 306 C.D. 2021
               : 
Pennsylvania Public Utility : 
Commission, : 
             Respondent : 

# **O R D E R**

AND NOW, this 21st day of April, 2022, the Declaratory Order entered by the Pennsylvania Public Utility Commission in the above-captioned matter on February 19, 2021, is REVERSED.

                         _____

                         LORI A. DUMAS, Judge